ASHTON GENERAL PARTNERSHIP,
INC., Appellant/Cross–Appellee,

v.

FEDERAL DATA CORPORATION,
Appellee/Cross–Appellant.

Nos. 95–CV–354, 95–CV–436.

District of Columbia Court of Appeals.

Argued March 14, 1996.
Decided Aug. 22, 1996.

William H. Bode, with whom Luis M. Acosta, Washington, DC, appeared on the brief, for appellant/cross-appellee.

Susan J. Rubin, New York City, for appellee/cross-appellant.

Before STEADMAN, KING, and REID, Associate Judges.

REID, Associate Judge:

■ Appellant/cross-appellee Ashton General Partnership, Inc. challenges various rulings of the trial court which resulted in dismissal of its lawsuit against appellee/cross-appellant Federal Data Corporation. In its cross-appeal, Federal Data contends that it was entitled to summary judgment regarding the contract and *quantum meruit* counts of Ashton's complaint and Ashton's claim for damages based on subcontracts allegedly promised to Federal Data. We affirm the trial court's dismissal of Ashton's amended complaint. We conclude that D.C.Code § 45–1926(c) (1990 Repl.) requires a plaintiff who files a claim for compensation for effecting the sale of a business or business assets, to allege that it (or he or she) possessed a real estate broker's license at the time of the transaction.

## FACTUAL SUMMARY

This case grew out of a dispute between Federal Data and General Dynamics, two technology companies which competed for an Air Force Strategic War Planning System Contract (SWPS Contract). General Dynamics won the contract and Federal Data filed bid protests with the General Accounting Office. Federal Data sought to settle its dispute with General Dynamics by selling some or all of its assets to General Dynamics. Ashton General Partners, Inc. asserted that Federal Data retained it to mediate the dispute. Further, Ashton contended that it mediated the dispute by arranging for the sale of one of Federal Data's contracts, the I–80 Contract, to General Dynamics for two million dollars in cash and for future subcontracts worth twenty-five to forty million dollars. Ashton sued Federal Data on three theories: (1) breach of contract; (2) *quantum meruit*; and (3) fraudulent misrepresentation; and sought six hundred ninety thousand dollars in actual damages and five million dollars in punitive damages.

Less than a week prior to trial, Federal Data filed a motion to dismiss[1] Ashton's amended complaint on the ground of an alleged jurisdictional bar contained in D.C.Code § 45–1926(c) (1990 Repl.) which provides:

> No person engaged in or conducting the business, or acting in the capacity of a real estate broker, real estate salesperson, or property manager within the District shall bring or maintain any action in the courts of the District for the collection of compensation for any services performed in that capacity, or for the enforcement of any contract relating to real estate or business without alleging that he or she was duly licensed under this chapter.

Federal Data maintained that Ashton was barred from bringing its lawsuit in the District's courts because it did not have a real estate broker's license. Ashton retorted that

---

1. Federal Data's motion was styled, in part, "motion to dismiss and for summary judgment with respect to plaintiff's amended complaint based upon lack of subject matter jurisdiction." In ruling on the motion to dismiss and not the motion for summary judgment, the trial court stated: "This Court grants the motion to dismiss instead of the alternative motion for summary judgment because summary judgment is not an appropriate disposition where subject matter jurisdiction is at issue."

under D.C.Code § 45–1926(b)(1), it was not obligated to obtain a license because the statutory provision only applies to real estate businesses.

On March 25, 1994, the trial court granted Federal Data's motion to dismiss on the ground that it "[lacked] subject matter jurisdiction over the claim" because: "in order to bring an action to collect fees for conduct that comes within [the statute] ... a party must allege that he, or she, or it is licensed under the statute. Ashton General Partners did not allege that it was so licensed." The trial court concluded that § 45–1926(c) creates a jurisdictional bar rather than a waivable affirmative defense, citing *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 474, 185 U.S.App.D.C. 322, 367 (1976). It declined to follow a fifth circuit case, *Backar v. Western States Producing Co.*, 547 F.2d 876 (5th Cir.1977), which involved a New York statute that was virtually identical to § 45–192..(c). The court in *Backar* described the New York statutory provision as an "affirmative defense." *Id.* at 881.

The trial court also made findings and conclusions regarding the applicability of § 45–1926 to Ashton. Ashton claimed that the statute did not apply to investment bankers and mediators or their services; and only covered real estate transactions. The trial court determined that "there is no getting around the fact that Ashton attempted to bring about (and indeed, did bring about) the sale of a major portion of Federal Data—known as the I–80 Contract—to General Dynamics," and that "Ashton's goal was to effect the sale of a business." Furthermore, in relying on *Kassatly v. Yazbeck*, 739 F.Supp. 651 (D.D.C.1990), the trial judge concluded that "[t]he legislative history [of § 45–1926] makes it clear that the intent in removing references to business brokers was simply to combine the licensing of business brokers, business chance brokers, and real estate brokers under the same statute." Finally, the trial judge rejected Ashton's argument that the § 45–1926 is unconstitutional because it violates the Due Process Clause of the Fifth Amendment. She concluded:

[B]usiness brokers in the District of Columbia are on notice that their actions are regulated by statute [because] [t]he title of the statute specifically refers to "Business Chance Licenses;" the legislative history of the statute makes it clear that business brokers and business chance brokers are governed by the statute ...; that history clearly defines the term business broker; references to business brokers and business licenses appear throughout the text of the statute; and finally, even the index to the Code refers readers who look up Business Chance Brokers to the statute at issue in the instant case.

## ANALYSIS

Ashton contends that: (1) the trial court erred in ruling that D.C.Code § 45–1926(c) barred its lawsuit because (a) Ashton is engaged in investment banking and the statute only applies to real estate businesses; (b) if Ashton was required to obtain a real estate license for the services rendered to Federal Data, the statute is unconstitutionally vague; and (c) Federal Data waived its right to raise the statute; and (2) the trial court erred in ruling that Ashton failed to show damages with respect to its fraudulent misrepresentation claim. Federal Data argues that Ashton was required to obtain a real estate license; the statute is not unconstitutionally vague; and subject matter jurisdiction cannot be waived. Federal Data also asserts that the trial court properly dismissed Ashton's fraudulent misrepresentation claim and that it is entitled to summary judgment on Ashton's claim of punitive damages. With regard to its cross-appeal, Federal Data maintains that (1) it was entitled to summary judgment on the contract and *quantum meruit* counts of Ashton's complaint because no contract existed between it and Ashton; and (2) it was entitled to summary judgment with respect to Ashton's claim for damages based on twenty-five to forty million dollars in subcontracts allegedly promised to it.

Under Super. Ct. Civ. R. 12(b)(1), a party may move to dismiss a complaint on the basis of the trial court's "[l]ack of jurisdiction over the subject matter." Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the Court lacks jurisdiction of the subject matter, the Court

shall dismiss the action." The jurisdictional issue raised here cannot be resolved without an interpretation of D.C.Code § 45–1926. As we have stated previously, "[t]he construction of a statute raises a 'clear question of law,' and we review the trial court's ruling *de novo.*" *District of Columbia v. Morrissey,* 668 A.2d 792, 796 (D.C.1995) (referencing and quoting *Office of People's Counsel v. Public Serv. Comm'n of the District of Columbia,* 520 A.2d 677, 681 (D.C.1987)).

### The Jurisdictional Issue

Federal Data argues that § 45–1926 contains a jurisdictional bar to Ashton's suit, and the trial court agreed. We do not perceive this to be an issue of subject matter jurisdiction, however, but we do agree, for the reasons discussed below, that the trial court properly dismissed the amended complaint pursuant to Super. Ct. Civ. R. 12(b)(6). Section 45–1926(c) provides that "No person engaged in or conducting the business, or acting in the capacity of a real estate broker [business chance broker] ... shall bring or maintain any action in the courts of the District for the collection of compensation for any services performed in that capacity, or for the enforcement of any contract relating to *real estate or business* without alleging that he or she was duly licensed under this chapter." The statute does not specify whether this provision constitutes a jurisdic-

tional bar to a legal action, or whether it is designed as a mandatory pleading and proof requirement, or whether it is an affirmative defense.[2] The trial court concluded that § 45–1926(c) is a jurisdictional bar, and declined to rely on a Fifth Circuit case interpreting a New York statute, Real Property Law § 442–d that is virtually identical in language to § 45–1926(c), as an affirmative defense. *See Backar v. Western States Producing Co., supra.*[3]

The New York courts of highest jurisdiction interpret their statute differently from *Backar,* treating it as embodying a mandatory pleading and proof requirement. In *NFS Services v. West 73rd Street Associates,* 102 A.D.2d 388, 477 N.Y.S.2d 135, 137 (1984), *aff'd,* 64 N.Y.2d 919, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985), the court concluded, "[s]ection 442–d bars any action to recover compensation except upon allegation and proof that the person was a duly licensed real estate broker on the date the cause of action accrued." (citations omitted). *See also Philip Mehler Realty, Inc. v. Kayser,* 176 A.D.2d 104, 574 N.Y.S.2d 1, 2 (1991); *Enfeld v. Hemmerdinger Estate Corp.,* 34 A.D.2d 980, 312 N.Y.S.2d 735 (1970), *aff'd,* 28 N.Y.2d 606, 319 N.Y.S.2d 854, 268 N.E.2d 649 (1971); *Sorice v. DuBois,* 25 A.D.2d 521, 267 N.Y.S.2d 227 (1966); and *Kirp v. Caleb's*

---

**2.** If § 45–1926(c) is a jurisdictional bar, a complaint may be challenged under Super.Ct.Civ.R. 12(b)(1) (lack of subject matter jurisdiction), at any time. *See* Charles Alan WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1350 (1990 ed.), at 194–95, and (1996 Supp.), at 80. "[A] dismissal under [R. 12](b)(1) is not on the merits and thus is not given res judicata effect." 2A J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 12.07 [2.—1] (2d ed. 1995), at 12–49. If § 45–1926(c) is a mandatory pleading requirement, a complaint may be challenged under Super.Ct.Civ.R. 12(b)(6) (failure to state a claim upon which relief may be granted). This challenge may be accomplished through an answer to the complaint, or by motion (written or oral) as late as trial on the merits. *See* MOORE'S FEDERAL PRACTICE, *supra,* ¶ 12.07 1, at 12–45; and Super.Ct.Civ.R. 12(h)(2). "A dismissal under [R. 12(b)(6) ] ... is on the merits and is accorded res judicata effect." MOORE'S FEDERAL PRACTICE, *supra,* ¶ 12.07 [2.—5], at 12–83. If § 45–1926(c) is an affirmative defense, it must be raised in a responsive pleading. *See* Super.Ct.Civ.R. 8(b) and (c) and R. 12(b).

**3.** New York Real Property Law (McKinney) § 442–d provides:

No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date on which the alleged cause of action arose.

Section 442–d does not apply to business chance brokers. Historically, separate sections of the New York Real Property Law, which have now been repealed, regulated real estate and business opportunity publishers and required the filing of a statement with the New York Department of State, and approval of the statement, before bringing any legal action to collect fees.

*Path Realty Corp.*, 19 A.D.2d 744, 242 N.Y.S.2d 877 (1963).[4] Similarly, we conclude that D.C.Code § 45–1926(c) contains a mandatory pleading requirement, and bars any action in the District's courts to collect compensation for services performed as a real estate broker, as defined by the statute, except upon allegation and proof that the person was a duly licensed real estate broker on the date the cause of action accrued.[5] Since § 45–1926(c) is a mandatory pleading statute, if a plaintiff fails to allege that it (or he or she) has a license under the statute, a defendant may raise the lack of a required allegation as a failure to state a claim upon which relief may be granted. This may be done in defendant's answer to plaintiff's complaint, or through a motion to dismiss under Super. Ct. Civ. R. 12(b)(6), or through a motion for judgment on the pleadings. A motion may be made as late as trial on the merits. *See* Super. Ct. Civ. R. 12(h)(2).

■ Here, in its July 16, 1993, amended answer to Ashton's amended complaint, Federal Data asserted that, "[t]he Amended Complaint fails to state a claim or cause of action upon which relief may be granted." In addition, on March 2, 1994, Federal Data filed a motion to dismiss and for summary judgment pursuant, in part, to Super. Ct. Civ. R. 12(b)(1) and R. 56.[6] Since Ashton never moved to amend its complaint to make the required allegation of a license under § 45–1926(c), the trial court could have treated Federal Data's motion to dismiss as a R. 12(b)(6) motion, or granted its request for dismissal or for summary judgment based upon its amended answer, asserting "[the failure] to state a claim or cause of action against Federal Data upon which relief can be granted." Accordingly, because Ashton failed to allege possession of a real estate broker's license at the time of the transaction in question, Ashton may not maintain its complaint, and it was subject to dismissal.

*The Waiver Issue*

■ Ashton contends, however, that Federal Data waived its right to raise § 45–1926 by waiting until five days before trial to file its motion to dismiss or for summary judgment. Ashton filed its initial complaint on April 14, 1992, and its amended complaint on May 26, 1993. Federal Data moved to dismiss and for summary judgment on March 2, 1994, approximately two years after Ashton's

4. In the few cases where the New York courts have permitted actions to recover compensation despite § 442–d, special circumstances have existed. For example, 1) the statute has been held to be inapplicable, *Gerstein v. 532 Broad Hollow Road Co.*, 75 A.D.2d 292, 429 N.Y.S.2d 195, 199 (1980) (plaintiff did not act as a broker but was paid for his special knowledge and experience); *Eaton Associates v. Highland Broadcasting Corp.*, 81 A.D.2d 603, 437 N.Y.S.2d 715, 716 (1981) (plaintiff's "services, including the preparation of a financial plan and the rendering of financial advice to ... employees and officers, [fell] outside the scope of [the statute]"); and 2) the public interest had not been implicated, *Rogovin v. Bach Realty Inc.*, 147 A.D.2d 364, 537 N.Y.S.2d 528, 529 (1989) (individual who was a duly licensed broker and who earned commissions permitted to maintain a *quantum meruit* and unjust enrichment action even though "the corporate plaintiff [was] technically barred from maintaining [any] action"); *Galbreath–Ruffin Corporation v. 40th and 3rd Corporation*, 19 N.Y.2d 354, 280 N.Y.S.2d 126, 131, 227 N.E.2d 30 (1967) (some recovery allowed where commissions were paid prior to legal action because "the animating purpose of imposing [a] sanction on obtaining a real estate broker's license is the protection of the public ... 'not to permit others to take advantage of the violation of the statute to escape their obligations.' " (quoting Pound, J., in *Bendell v. De Dominicis*, 251 N.Y. 305, 310, 167 N.E. 452, 453)).

5. Section 45–1926(c) is similar to the District's statute of limitations provision. *See* D.C.Code § 12–301 (1995 Repl.) ("Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below...."). Unlike § 12–301, however, § 45–1926 contains the words "without alleging." The use of these words means that § 45–1926(c) is a mandatory pleading statute, just as the use of the words "without alleging and proving" in § 442–d of the New York Real Property Law indicates that the New York law is a mandatory pleading and proof statute. Although § 45–1926(c) does not contain the words "and proving," the requirement that a plaintiff plead compliance with the licensing statute necessarily establishes this element as part of a plaintiff's cause of action, which must be proven by the plaintiff in order to recover. It is this underlying aspect, rather than any technicality of pleading, that permits the issue to be raised at a later time. *See* note 2 *supra*.

6. The trial court's cutoff date for filing summary judgment motions was July 30, 1993.

lawsuit was filed, and extensive discovery had been taken.[7] The motion was filed after the statute of limitations for bringing the action in Maryland had expired. Given the procedural posture of this case, the trial court had to exercise its discretion in determining whether Federal Data waived its right to raise Ashton's failure to allege a license under § 45–1926(c).

As we have recognized previously, "[j]udicial discretion must ... be founded upon correct legal principles, (citation omitted), and a trial court abuses its discretion when it rests its conclusions on incorrect legal standards." *In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991) (citation omitted). The exercise of judicial discretion must also be " 'based upon and drawn from a firm factual foundation.' " *Id.* (quoting *Johnson v. United States*, 398 A.2d 354, 364 (D.C.1979)). Paramount among the standards used to review a dismissal under R. 12(b)(6) is "the legal sufficiency of the complaint." *Aronoff v. Lenkin Co.*, 618 A.2d 669, 684 (D.C.1992). "[A] dismissal for failure to state a claim upon which relief can be granted is warranted only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Owens v. Tiber Island Condominium Ass'n*, 373 A.2d 890, 893 (D.C.1977)). Because § 45–1926(c) is a mandatory pleading statute, and Ashton failed to allege that it obtained a license under the statute, its complaint clearly is insufficient as a matter of law. Hence, it is entitled to no relief under the legal sufficiency of the complaint standard.

In addressing the waiver issue, the trial court used another standard, concluding that, because of its own actions, Ashton was not prejudiced by Federal Data's late reliance on § 45–1926(c) as a bar to Ashton's claim for a commission. Specifically, the trial court stated:

This Court finds that the law employed by Federal Data as a basis for its motion to dismiss is not new, nor was it hid from the parties or their attorneys. Ashton was on notice that a jurisdictional bar (or an affirmative defense) might exist. Indeed the attorneys representing Ashton also represented the Plaintiff in *Kassatly v. Yazbeck*, 739 F.Supp. 651 (D.D.C.1990), in which Judge Revercomb granted a motion for summary judgment on the grounds that Plaintiff, who had acted as a business chance broker, was precluded from bringing an action because he failed to meet the requirements of section 1926(c). Ashton was fully capable of protecting itself against any prejudice by filing a timely claim elsewhere if grounds existed to support such a filing. It should not now be able to hide behind the alleged prejudice that it, by its own actions, permitted to grow over the course of this litigation.

Despite the trial court's conclusion, Ashton seeks refuge in *Strauss v. Douglas Aircraft Co.*, 404 F.2d 1152, 1155 (2d Cir.1968), where the court stated that the "risk of substantial prejudice increases in proportion to the length of defendant's delay in seeking [an amendment to raise a defense of limitations.]" There an affirmative defense was not raised until four years after the complaint was filed and the court concluded that it "should have [been] raised ... in [the] original answer [to the complaint]." *Id.* at 1156. The *Strauss* court held that "because of the substantial prejudice to Strauss caused by Douglas' excessive delay in raising the Statute of Limitations defense, the court below abused its discretion in permitting Douglas to amend its answer." *Id.* at 1158. Ashton complains that had its suit been dismissed expeditiously without a ruling on the merits, due to a timely § 45–1926(c) challenge, it could have filed its action in Maryland where Federal Data conducted business.

7. On May 18, 1992, Federal Data moved to dismiss Ashton's complaint on the ground of lack of personal jurisdiction under Super.Ct.Civ.R. 12(b)(2). Federal Data contended that a court in the State of Maryland should hear the complaint because Federal Data is a Delaware Corporation, maintains no office in the District of Columbia, transacted no business and entered into no contract with Ashton in the District of Columbia. The trial court denied the motion on September 11, 1992 on the ground that jurisdiction had been established under D.C.Code § 13–423(a), the District's long-arm statute.

Even if a prejudice standard is applied to the waiver issue here, Ashton still cannot prevail. The problem with Ashton's argument, as the trial court recognized, is that it should have filed a protective suit in Maryland. *See Wheeling–Pittsburgh Steel Corporation v. Donovan Wire and Iron Company,* 614 F.2d 945 (1980). When Federal Data moved to dismiss Ashton's complaint in 1992 on personal jurisdictional grounds, Ashton should have been alerted to the need for a protective suit. Even more significant, Ashton's attorneys handled the *Kassatly* case in which the court held that § 45–1926(c) was a bar to a similar case where no license was obtained prior to the performance of business chance broker services. And, Ashton first filed its complaint in April 1992, only two years after *Kassatly* was decided. These facts negate Ashton's argument of substantial prejudice. *See Whitener v. Washington Metropolitan Area Transit Authority,* 505 A.2d 457 (D.C.1986). In short, we cannot conclude that the trial court abused its discretion in rejecting Ashton's prejudice argument with respect to the waiver issue.

*The Applicability of Section 45–1926 to Ashton And The Due Process Issue*

■ Ashton contends that the trial court erred in ruling that § 45–1926(c) barred its lawsuit. Ashton asserts that it is engaged in investment banking and the statute only applies to real estate businesses. Furthermore, Ashton maintains, if it was required to obtain a real estate broker's license to perform the services rendered to Federal Data,

the statute is unconstitutionally vague as applied because it fails "to give notice to parties such as Ashton that they must obtain a real estate license." In essence, Ashton maintains that (1) the real estate brokers' licensure statute does not apply to it; and (2) no ordinary and prudent business chance broker would be on notice that it did apply to it. We disagree.

We turn first to Ashton's argument that § 45–1926(c) does not apply to it. The trial court rejected Ashton's "[assertion] that it provided only 'investment banking and mediation services to Federal Data,'" and stated:

> But whatever investment banking and mediation services Ashton provided, there is no getting around the fact that Ashton attempted to bring about (and indeed, did bring about) the sale of a major portion of Federal Data—known as the I–80 Contract to General Dynamics. The papers filed in the instant case are replete with inferences, as well as direct references, to the fact that Ashton's goal was to effect a sale of a business. Moreover, the damages sought by Ashton are based upon a commission for the sale of the I–80 contract and related business opportunities.

Based on our review of the statutory language, the legislative history of the statute, and the implementing regulations, we conclude that the statute applies to Ashton. As drafted in 1982, § 45–1926 clearly applied to business chance brokers and the sale of a business.[8] In 1984, the Council of the Dis-

8. Section 7 of D.C.Law 4–209, March 10, 1983, 30 D.C.Reg. 390 (1983), D.C.Code § 45–1926 provided:

(a) Except as otherwise provided in this act, it shall be unlawful for any person, directly or indirectly, to engage in conduct, or advertise or hold himself or herself out as engaging in or conducting the business of a *real estate broker* or *business chance broker,* real estate salesperson, business chance salesperson, or property manager, within the District, unless, during the course of the activity described above, that person held a valid *real estate broker, business chance broker,* appropriate salesperson's or property manager's license, whichever is applicable, issued by the Mayor.

(b) One act for a fee, commission or other valuable consideration of listing for sale, buying, selling, exchanging *real estate or a business* of or for another, or offering for another to list

for sale, buy, sell, exchange, *real estate or a business,* or leasing,, renting, or offering to lease or rent, *real estate or a business,* or negotiating or offering to negotiate a loan secured by a mortgage, deed of trust, or other encumbrance upon or transfer of *real estate or a business,* or other activity specified in section 3(12), except as specifically excepted in section 3(12), shall constitute a person performing, offering, or attempting to perform or offer any of the acts enumerated herein, a *real estate broker or business chance broker,* unless such · act shall be performed, offered, or attempted to be performed or offered, by a person for or on behalf of a *real estate or business chance broker,* in which event such act shall constitute such person as a real estate salesperson or business chance salesperson.

(c) No person engaged in or conducting the business, or acting in the capacity of a *real*

trict of Columbia amended the statute to establish registration and certification procedures for resident property managers. During the process of amending the statute, the Council concluded that because the licensure requirements were identical for real estate and chance brokers, the references to chance brokers could be eliminated. Consequently, the Council deleted the words "business chance broker" from § 45–1926 in order to streamline the licensure process. Both categories of brokers were combined into the real estate broker's license. However, the intent was to retain the licensure requirement for business chance brokers. As the report of the Council's Committee on Consumer and Regulatory Affairs stated:

> DCRA [the Department of Consumer and Regulatory Affairs] recommends deleting all references to business chance brokers from the statute and eliminating the business chance broker member from the real estate board.

> It was their position that the licensure requirements for business chance brokers are identical to those for a real estate broker, therefore they suggested streamlining the licensure process by combining both categories into the real estate broker's license. This would provide for better control of the industry and greater protection for the consumer.

Council of the District of Columbia, Committee on Consumer and Regulatory Affairs, Committee Report on Bill 5–175, "The District of Columbia Real Estate Licensure Act Amendment Act of 1984," May 15, 1984, at 6. Accordingly, § 45–1926 was amended to read as follows:

> (a) Except as otherwise provided in this chapter, it shall be unlawful for any person to engage in conduct, advertise, or hold himself or herself out as engaging in the business of a real estate broker, real estate salesperson, or property manager within the District, unless that person holds a valid license as a real estate broker, real

estate salesperson, or property manager issued pursuant to this chapter.

> (b)(1) For the purposes of this chapter, a person will be performing as a real estate broker if:

> (A) The person accepts a fee, commission, or other valuable consideration for exchanging, buying, selling, renting or leasing *real estate or businesses;*

> (B) The person negotiates a loan secured by a mortgage, deed of trust, or other encumbrance on real property or *a business;*

> (C) The person is engaged in any activity specified by § 45–1922(12).

> (b)(2) Any person performing any of the activities described in paragraph 1 of this subsection for or on behalf of a real estate broker will be considered a real estate salesperson for the purposes of this chapter.

> (c) No person engaged in or conducting the business, or acting in the capacity of a real estate broker, real estate salesperson, or property manager within the District shall bring or maintain any action in the courts of the District for the collection of compensation for any services performed in that capacity, or for the enforcement of any contract relating to *real estate or business* without alleging that he or she was duly licensed under this chapter.

(Emphasis added). It is clear that the words "business chance broker" were eliminated in the 1984 amendment of the statute.

Generally, in interpreting statutory language the court relies on the plain meaning of words, and " '[a]bsent a clearly expressed legislative intention to the contrary, the language must ordinarily be regarded as conclusive.' " *West End Tenants Ass'n v. George Washington Univ.,* 640 A.2d 718, 726 (D.C. 1994) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). We "will not give effect to a plain

---

estate broker, business chance broker, real estate salesperson, business chance salesperson, or property manager within the District shall bring or maintain any action in the courts of the District for the collection of compensation for any services performed in that capacity, or

for the enforcement of any contract relating to *real estate or business* without alleging that he or she was duly licensed under this act to perform the duties which are the subject of the action at the time the alleged cause of action arose. (Emphasis added).

language interpretation which is 'plainly at variance with the policy of the legislation as a whole.'" *In re G.G., Jr.,* 667 A.2d 1331, 1334 (D.C.1995) (citing *West End Tenants Ass'n, supra*) (quoting *United States v. American Trucking Ass'ns,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940)). The legislative history of the 1984 amendments clearly reveals the Council's intent to continue to regulate business chance brokers. The section-by-section analysis of the bill containing the 1984 amendments said, *inter alia,* "[t]he proposed bill recognizes that business chance brokers are licensed as real estate brokers and therefore should be identified as such." *Id.* at 633. Moreover, § 45–1926(b)(1)(A) and (B) confirms the Council's intent by making it clear that a person performs as a real estate broker if the person (1) "accepts a fee, commission, or other valuable consideration for ... selling ... *real estate or businesses*"; or (2) "negotiates a loan ... on *real property or a business.*"

Ashton contends that the words "businesses" and "business" refer only to the real estate business. While a quick reading of the statute might well prompt this conclusion, this reading is clearly inconsistent with the legislative history, as set forth above. *See also Kassatly, supra* in which the court stated:

> Under section 45–1926, a "business chance broker" is a "real estate broker" and is barred from bringing a lawsuit to collect a commission if the broker was not licensed at the time of the transaction. (footnote omitted). Plaintiff Kassalty was not a licensed real estate broker (or business chance broker) at any time during the Grand Hotel negotiations (1984–86). He is barred from bringing suit to collect a commission from that transaction.

739 F.Supp. at 653. Although the 1982 version of § 45–1926(b) included references to *real estate or a business* and *real estate broker or chance broker* in the same paragraph, the 1984 amendments retained the reference to *real estate or business[es],* added a reference to *real property or a business,* and deleted the words *business chance broker,* but described a *real estate broker* as

engaging in activities relating to *businesses* or *a business.* Moreover, regulations implementing the Real Estate Licensure Act and codified in May 1990, also evidence the Council's intent to continue to regulate business chance brokers. Under § 2601 of the regulations, entitled "Applications For Broker License," § 2601.3 states: "Except as provided in § 8(e) of the Act, all applicants for licensure as a *real estate or business chance broker* shall furnish at the time of filing an application, evidence of having satisfactorily completed approved course(s) pursuant to § 2606." (Emphasis added). 17 DCMR § 2601.3 (1990). Therefore, we are satisfied that the Council intended to continue a licensing requirement for business chance brokers despite its 1984 amendments to the Real Estate Licensure Act, and decided to license business chance brokers as real estate brokers. The trial court made factual findings indicating that "Ashton's goal was to effect the sale of a business" by selling Federal Data's I–80 Contract to General Dynamics.[9] We see no need to disturb those factual findings. It is clear, therefore, that the real estate brokers' licensure statute applies to Ashton.

We turn next to Ashton's contention that even if the statute applies to it, no ordinary and prudent business chance broker would be on notice as to its applicability. We disagree. Because of the Council's 1984 statutory amendment which, in part, deleted the words "business chance broker" from the statute, the real estate brokers' licensure act is not a model of clarity. Nonetheless, before transacting any business in the District, an ordinary and prudent business chance broker would endeavor to determine the District's law, if any, regarding business chance brokers. The broker reasonably could be expected to consult the index of the District of Columbia Code. That index has a heading, "business chance brokers," which cross-references "real estate and business chance brokers." Under the latter heading, the word "licenses" appears, and a sub-heading which reads, "acting as broker or salesperson without a license. prohibited, § 45–1926." Thus, an ordinary and prudent business chance

---

**9.** Ashton does not contend that the transfer of a contract is not the sale of a business.

broker easily could determine that there is a licensure requirement in District law.[10] Moreover, an ordinary and prudent business chance broker reasonably could be expected to check with the local business regulatory agency, or its regulations, to ascertain whether a license is required for the performance of a business chance broker's services. A broker's search would lead to 17 DCMR § 2601.3, mentioned above, which indicates the existence of a licensure requirement for a "real estate *or* business chance broker" (emphasis added).

Furthermore, the record on appeal reveals that Ashton and its major principal have had substantial business experience. Hence, they are aware that businesses must determine and meet licensure requirements in jurisdictions where they conduct business. They should also have known that the requirement of a license to render services involving the sale of businesses and business opportunities is not uncommon.[11] Here, the trial court determined that based upon their representation of Kassalty in the *Kassatly* case, *supra*, Ashton's attorneys had direct notice that § 45–1926(c) required the company to get a license to effect the sale of a business, and that the statute represented a bar to Ashton's effort to collect a commission due to its failure to obtain a license. Under these circumstances, Ashton simply did not take the precautions of an ordinary and prudent business chance broker. Accordingly, we cannot say that § 45–1926(c) is unconstitutionally vague as applied to Ashton.

For the reasons set forth above, the trial court did not err in ruling that § 45–1926 imposes a licensure requirement on business chance brokers; that because Ashton was engaged in an effort to effect the sale of a business, the statute applied to it; and that Ashton had notice of its coverage under the statute. Nor did the trial court abuse its discretion in concluding that Federal Data did not waive the right to raise § 45–1926(c). Because Ashton did not allege licensure under the District's real estate licensure act, it failed to state a claim upon which relief can be granted, and its action was properly dismissed. Hence, we affirm the judgment of the trial court.[12]

**Affirmed.**

---

10. Business chance brokers have been required to be licensed in the District of Columbia since at least the passage in 1937 of the "Real Estate and Business Brokers' Licenses Act." *See* D.C.Code § 45–1401 (1973).

11. At least eleven states, including California, Michigan, Illinois and Florida, have statutes similar to the District's which mandate that facilitators of business opportunities comply with real estate brokers' licensure requirements. Moreover, jurisdictions have strictly construed and enforced real estate broker statutes which require an allegation of licensure as a condition of bringing legal action to recover a commission or a fee for the sale of real estate or businesses or business opportunities. *See*, for example, *Springer v. Rosauer*, 31 Wash.App. 418, 641 P.2d 1216 (1982) (failure to allege real estate brokers' license barred recovery of compensation for finding purchaser of a supermarket; statute defined real estate broker to include sale or negotiation of business opportunities or interest); *Knight v. Johnson*, 741 S.W.2d 842 (Mo.App.1987) (plaintiff barred from recovering commission on sale of a business including an interest in real property because of failure to plead and prove licensure as a real estate broker or salesman); *Cardillo v.*

*Canusa Extrusion Engineering, Inc.*, 145 Mich. App. 361, 377 N.W.2d 412 (1985) (plaintiff who was not licensed as a real estate broker could not recover commission for finding a buyer of the assets of a business; statute originally included a definition of a business chance broker, but the legislature later collapsed the definition of a business chance broker into the definition of a real estate broker); and *All Points Traders v. Barrington Associates*, 211 Cal.App.3d 723, 259 Cal.Rptr. 780 (1989) (investment banking firm which provided information regarding qualified purchasers for the sale of a pipe fitting company barred from collecting commission because it did not have a real estate broker's license; statute defined real estate broker to include one who solicits prospective purchasers of real property or a business opportunity; legislature merged real estate and business opportunity licenses into the real estate licensure statute).

12. Because we have affirmed the judgment of the trial court in appeal No. 95–CV–354, we do not reach the issues of fraudulent misrepresentation and punitive damages raised by Ashton, nor the points raised in Federal Data's cross-appeal, No. 95–CV–436.