*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 19-CV-1250 & 20-CV-0122

DEON D. COLVIN, APPELLANT,

V.

HOWARD UNIVERSITY, APPELLEE.

Appeals from the Superior Court
of the District of Columbia
(CAB-3573-19)
(CAB-7929-19)

(Hon. Robert R. Rigsby, Trial Judge)
(Hon. Hiram E. Puig-Lugo, Trial Judge)

(Argued April 27, 2021      Decided August 19, 2021)

Deon D. Colvin, *pro se.*

*Zachary I. Shapiro*, with whom *Nathiya Nagendra*, was on the brief, for appellee.

Before EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: Howard University dropped Deon Colvin from its Political Science PhD program, citing his failure to complete his doctoral degree within the prescribed seven-year timeframe. Colvin responded by filing suit in D.C. Superior Court alleging several breaches of contract. That lawsuit was dismissed,

so Colvin filed another, and another, and another, with each likewise being dismissed. This consolidated appeal is from the third and fourth of those dismissed suits, and it concerns the preclusive effect the various dismissals have on the subsequent suits. Because each of the contested dismissals was justified by either collateral estoppel (issue preclusion) or res judicata (claim preclusion), we affirm.

**I.**

Colvin was first admitted to Howard's Political Science PhD Program for the Fall 2004 semester. As provided in Howard's Graduate School Rules and Regulations, PhD students are expected to complete their doctoral degree within seven years, otherwise they are to "be automatically dropped from the program." Colvin was therefore expected to complete his doctoral degree by the fall of 2011. He did not, but neither did Howard automatically drop him from the program. As a result, Colvin continued working toward his degree for several more years. By 2014, he was ready to defend his dissertation proposal and he sought admission to "candidacy" for his PhD degree. Despite it being almost three years past the seven-year mark, Howard permitted Colvin to re-enroll to defend his dissertation proposal. He successfully did so and Howard admitted him to candidacy for his PhD degree in May 2014. Per a separate provision of Howard's Graduate School Rules and

Regulations, Colvin's PhD candidacy period remained valid for a maximum of five years.

Two years later, Colvin again sought readmission for the Fall 2016 semester so he could present and defend his dissertation. This time, however, the Dean of Howard's Graduate School denied his request. He instead dropped Colvin from the PhD program citing several factors: (i) Colvin had far exceeded the seven-year "expected time-to-degree" requirement; (ii) a number of Colvin's courses were too old to count toward fulfillment of Colvin's graduation requirements; and (iii) Colvin had previously been given two extensions under the condition that he defend his dissertation within a certain timeframe, and he failed to meet that condition each time.

Believing his dismissal from the PhD program was based on factual inaccuracies—more specifically, that he possessed the requisite number of course credits to satisfy his degree requirements, and that he was only given one prior extension, not two—Colvin contested his dismissal via Howard's informal grievance process as set out in the Student Handbook. His efforts were unsuccessful. The Dean stood by his dismissal letter; the Chair of the Department of Political Science informed Colvin that there was nothing he could do, and explained that the

principal reason for Colvin's dismissal was his "failure to finish and defend [his] dissertation within the length of time required of all graduate students"; Howard's Provost determined that Colvin's dismissal was "in accordance with . . . program policies and procedures"; and Howard's President agreed with the Provost, believing that the factual inaccuracies claimed by Colvin "provided no additional pertinent information which would impact the disposition of [Colvin's] dismissal."  When Colvin attempted to initiate Howard's formal grievance process, he was informed that he could not do so because the Provost had already closed Colvin's case.

Colvin then sued Howard in D.C. Superior Court.  That lawsuit eventually splintered into four separate suits, which we detail below.

*Colvin I*

Colvin first filed suit in July 2018 (*Colvin I*), and the case was assigned to Judge José M. López.  The *Colvin I* complaint alleged five counts of implied breach of contract for Howard's factually inaccurate review of his academic record (Count I); ouster of Colvin prior to the conclusion of his five-year status as a doctoral candidate (Count II); failure to allow Colvin to engage in the informal grievance process (Count III); failure to comply with its grievance procedures when the

Provost closed Colvin's case (Count IV); and failure to allow Colvin to engage in the formal grievance process (Count V).

Howard moved to dismiss the suit for failure to state a claim under Superior Court Civil Procedure Rule 12(b)(6). It argued that academic decisions regarding whether a student has satisfied a school's academic standards are entitled to judicial deference and should not be second-guessed absent evidence of arbitrary or capricious conduct, which Colvin had not alleged. Howard also asserted that Colvin's breach of contract claims failed as a matter of law because (i) Colvin could point to no contractual provision guaranteeing him the full five years of his doctoral candidacy period, (ii) Howard had complied with its policies when dismissing Colvin, namely, its seven-year time-to-degree and course-viability policies, and (iii) Howard complied with its informal grievance procedures, and Colvin abandoned his right to submit a formal grievance when he appealed his ouster directly to Howard's Provost and President.

Colvin opposed the motion. He argued his dismissal was arbitrary and violated the covenant of good faith and fair dealing implicit in every contract. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006) ("[A]ll contracts contain an implied duty of good faith and fair dealing.") (internal quotation marks omitted).

For support, he claimed that his ouster was based on several faulty factual premises and that he was entitled to remain in the PhD program for the duration of his five-year candidacy period so long as he could satisfy Howard's degree requirements. He also contested Howard's assertion that it had complied with its informal grievance process and disputed that he had abandoned his formal grievance rights by seeking assistance from Howard's Provost and President.

Judge López granted Howard's motion to dismiss, albeit without prejudice. He concluded that Howard's academic decision to oust Colvin from its PhD program was entitled to deference so long as there was "no demonstration . . . of improper motivation or irrational action." Because Howard's policies permitted dropping Colvin from the program after he failed to complete his doctoral degree within the allotted seven-year time period, Judge López determined that Colvin had not demonstrated any "improper motivation or irrational action," and thus failed to state a claim on which relief might be granted in any of his five breach of contract claims.

Colvin did not file a motion for reconsideration or attempt to amend his complaint to cure the alleged deficiencies noted by Judge López. Nor did he appeal the dismissal.

*Colvin II*

Instead of attempting to cure his complaint in *Colvin I*, Colvin filed a new suit (*Colvin II*). The *Colvin II* complaint was roughly the same as the *Colvin I* complaint, alleging the same five counts for breach of contract.[1] The only differences between the two complaints were factual in nature, as Colvin attempted to bolster his allegations that Howard relied upon factual inaccuracies when dropping him from its PhD program. Before Howard responded to the *Colvin II* complaint, Colvin voluntarily dismissed his suit under Superior Court Civil Procedure Rule 41(a)(1)(A)(i). He did not provide an explanation for the voluntary dismissal, but his decision was perhaps prompted by the fact that the same judge who presided over *Colvin I* (Judge López) was assigned to preside over *Colvin II*.

*Colvin III*

Two days after voluntarily dismissing *Colvin II*, Colvin initiated a third action (*Colvin III*), this time drawing Judge Robert R. Rigsby as the presiding judge. The

---

[1] The *Colvin I* complaint also raised allegations of fraud and intentional infliction of emotional distress. These claims were omitted from the *Colvin II* complaint and are not relevant to this appeal so, aside from flagging them here, we do not discuss them further.

*Colvin III* complaint—like the *Colvin II* complaint—alleged the same five counts for breach of contract as the *Colvin I* complaint and was nearly identical to it in substance. The main differences between the *Colvin I* and *Colvin III* complaints were also of the factual variety, as Colvin fleshed out some facts that were presented in slightly less-detailed form to Judge López in *Colvin I*.

Howard filed a motion requesting that Judge Rigsby transfer *Colvin III* to Judge López. It argued the *Colvin III* complaint was "functionally identical" to the claims "previously adjudicated and dismissed in *Colvin I*" and accused Colvin of "garden-variety judge shopping." Colvin opposed the transfer motion but denied Howard's accusations that he was judge shopping. Judge Rigsby denied the motion to transfer the case to Judge López.

In addition to its motion to transfer, Howard again moved to dismiss the case for failure to state a claim, but this time it also argued that the dismissal of *Colvin I* precluded *Colvin III* "under the doctrines of *res judicata*, collateral estoppel, and the law of the case." Judge Rigsby rejected Howard's preclusion arguments, concluding the various preclusion doctrines were not applicable because *Colvin I* was dismissed without prejudice, so there was no final decision on the merits of Colvin's contract claims. But he agreed with Howard that the complaint failed to survive a Rule

12(b)(6) motion—albeit for different reasons than those Judge López provided in *Colvin I*—and dismissed the *Colvin III* complaint for failure to state a claim. Although Judge Rigsby's order did not state whether the dismissal was with or without prejudice, the case was closed and all future hearings were vacated.

Colvin then filed a motion to reopen *Colvin III* and for leave to amend his complaint. In the proffered amended complaint, Colvin sought to add a sixth count for breach of contract stemming from Howard's alleged failure to maintain one uniform degree-requirement manual. According to Colvin, Howard used two different manuals (a 1979 manual and a 1983 amended version of the 1979 manual) that detailed different policies regarding which courses could be used to satisfy a student's degree requirements, which caused him to be unfairly dropped from the program. Judge Rigsby denied Colvin's motions to reopen and to amend, concluding the amendments would be futile. Colvin noted an appeal to this court, contesting the dismissal of *Colvin III* and the denial of his motion to amend.

*Colvin IV*

Colvin then initiated a fourth action (*Colvin IV*), drawing Judge Hiram E. Puig-Lugo as the presiding judge. The *Colvin IV* complaint was identical to the proffered amended complaint Colvin was denied leave to file in *Colvin III*.

Howard moved to dismiss the *Colvin IV* complaint, primarily arguing that Colvin's contract claims were barred by res judicata in light of Judge Rigsby's Rule 12(b)(6) dismissal of *Colvin III*. Colvin opposed the motion, arguing the *Colvin III* dismissal order did not state whether it was with or without prejudice, thus no final judgment on the merits was issued, making res judicata inapplicable. Judge Puig-Lugo agreed with Howard that res judicata precluded Colvin's fourth suit. He explained that because the claims in *Colvin III* were the same as those raised in *Colvin IV*, and because "Judge Rigsby issued a final judgment on the merits against [Colvin] on [those claims]," res judicata barred relitigation of the claims in *Colvin IV*. To the extent Colvin was alleging any new claims in his *Colvin IV* complaint, Judge Puig-Lugo noted that res judicata would still present a barrier because Colvin could have brought those claims in *Colvin III*.

Colvin appealed Judge Puig-Lugo's order to this court, which we then consolidated with the *Colvin III* appeal. Appeals from the dismissals in *Colvin III* and *Colvin IV* are now before us.

## II.

On appeal, Colvin challenges the following trial court orders: (i) the dismissal of *Colvin III*; (ii) the denial of his motion for leave to amend the *Colvin III* complaint; and (iii) the dismissal of *Colvin IV*. We discuss each challenge in turn.

### A. Dismissal of *Colvin III*

Judge Rigsby dismissed the *Colvin III* complaint on its merits, but only after rejecting Howard's arguments that various preclusion doctrines barred the claim from proceeding. While the parties now debate whether Judge Rigsby was right on the merits of the 12(b)(6) motion, Howard again argues in the alternative that *Colvin III* was precluded by the dismissal of *Colvin I*. We agree.[2] Howard argues *Colvin III* is precluded by *Colvin I* under three different preclusion doctrines: res judicata (claim preclusion), collateral estoppel (issue preclusion),[3] and the law of the

---

[2] That Howard failed to cross-appeal Judge Rigsby's adverse preclusion ruling does not bar us from affirming on that basis. *See Borger Mgmt., Inc. v. Sindram*, 886 A.2d 52, 63-64 (D.C. 2005) (cross-appeal unnecessary for appellee to argue independent basis for affirmance that was rejected by the trial court).

[3] The term "res judicata" is sometimes used in its broader sense: as an umbrella term encompassing both claim and issue preclusion. *See Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 77 n.1 (1984) (citing Restatement (Second) of Judgments, Introductory Note before ch. 3 (1982), and 18 WRIGHT, MILLER &

case doctrine. We conclude that while *Colvin III* is not claim-precluded, the question whether the complaint filed was sufficient to state a claim is issue-precluded by *Colvin I*. Because of that, we need not determine whether the law of the case doctrine applies.

### 1. Claim preclusion

When a court renders a final judgment on the merits of a cause of action, claim preclusion creates an absolute bar to relitigating that cause of action between the same parties. *Shin v. Portals Confederation Corp.*, 728 A.2d 615, 618 (D.C. 1999). At first glance, claim preclusion would seem to apply here. After all, (1) the parties in *Colvin I* are the same as those in *Colvin III*; (2) the two complaints raise the same five breach of contract claims; and, as Howard points out, (3) Judge López's dismissal was a final appealable judgment in the sense that the "dismissal of a complaint, even without prejudice, is sufficiently drastic to be deemed final, and therefore appealable." *Perry v. District of Columbia*, 474 A.2d 824, 825-26 (D.C. 1984). But to take that third step would be a mistake. We have never equated finality

COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4402 (1981)). "To avoid confusion, we employ the more modern terminology, referring to . . . *res judicata* as 'claim preclusion' and collateral estoppel as 'issue preclusion.'" *Smith v. Jenkins*, 562 A.2d 610, 612 n.3 (D.C. 1989).

for appealability purposes with finality for claim preclusion purposes, and it would be an error to do so.

Whether a judgment is sufficiently final to permit an appeal is a different question from whether it is sufficiently final to have claim-preclusive effects. While there is some "overlap in the purposes of requiring finality for appeal and for preclusion, it is clear that definitions of finality cannot automatically be carried over from appeals cases to preclusion problems." 18A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4432 (3d ed. 2021); *see also* Restatement (Second) of Judgments § 13 cmt. *b* (1982) (rejecting premise that "finality for appellate review is the same as finality for purposes of [claim preclusion]."). Here, the *Colvin I* dismissal was not final for claim preclusion purposes because it was without prejudice.

Dismissals without prejudice are not final for claim preclusion purposes because a dismissal without prejudice "does not determine the merits" of the underlying claim(s). *Interdonato v. Interdonato*, 521 A.2d 1124, 1131 n.11 (D.C. 1987). Where there is no final judgment on the underlying merits of a cause of action, claim preclusion is inapposite. *See, e.g.*, *id.* (when dismissal does not determine the merits, claim preclusion does not apply); *Thoubboron v. Ford Motor*

*Co.*, 809 A.2d 1204, 1210 (D.C. 2002) ("[A] dismissal without prejudice has no res judicata effect."); *Shin*, 728 A.2d at 618 ("[A] dismissal of a claim without prejudice does not bar a subsequent suit of issues arising out of the same cause of action."); *Pipher v. Odell*, 672 A.2d 1092, 1095 (D.C. 1996) ("[A] dismissal without prejudice, by definition, does not bar a subsequent suit."); *Evans v. Schlein*, 51 A.2d 472, 474 (D.C. 1946) ("The effect of the dismissal of a suit 'without prejudice' is to finally dispose of that particular suit, but it does not operate as a bar to a new suit on the same cause of action.").[4]

Because Judge López's *Colvin I* dismissal was without prejudice, it was not a final judgment on the substantive merits of Colvin's breach of contract claims, but a ruling that he had insufficiently pled those claims. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C. Cir. 1983) ("The usual meaning of [without prejudice] . . . is 'without prejudice as to the substantive cause of action.'") (quoting *In re*

---

[4] That is not to say that a dismissal without prejudice might never become a final judgment on the merits of the underlying claim(s). For example, had Judge López's dismissal without prejudice in *Colvin I* provided a specified time period in which Colvin could file an amended complaint, and Colvin then failed to meet that deadline, we might then treat the dismissal as being with prejudice and having claim-preclusive effects. *See, e.g.*, *Hoffman v. Nordic Naturals, Inc.*, 837 F.3d 272, 279-80 (3d Cir. 2016) (finding claim preclusion applied where appellant elected not to amend his complaint within the timeframe provided by the trial court, but instead filed a new action). Howard never argued that any express or implied deadline for Colvin to file an amended complaint in *Colvin I* had passed.

*Kauffman Mut. Fund Actions*, 479 F.2d 257, 267 (1st Cir. 1973)). That meant Colvin was permitted to amend his complaint or file a new action on the same underlying claims. Given the lack of finality in the relevant sense, *Colvin I* did not have claim-preclusive effect.

## 2. Issue preclusion

Issue preclusion is another matter.[5] It prevents not the relitigation of a particular *claim*, but the relitigation of a particular *issue* decided in a prior action. *See Davis v. Davis*, 663 A.2d 499, 501 (D.C. 1995). This case involves defensive

---

[5] There are two different types of issue preclusion: collateral estoppel, which occurs when the second action involves a different claim, and direct estoppel, which occurs when the second action involves the same claim. *See* Restatement (Second) of Judgments § 27 cmt. *b* (1982) ("If . . . the second action is brought on a different claim, . . . preclusion is sometimes designated as collateral estoppel."); WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4402 (3d ed. 2021) (stating that direct estoppel occurs "whenever a first suit was ended in a manner that did not give rise to claim preclusion, but that did warrant preclusion of a specific issue in a later action on the same claim"); *id.* § 4418 (defining and discussing direct estoppel). Howard uses the term collateral estoppel to describe the type of issue preclusion at play here, but direct estoppel is the more accurate term because the claims in *Colvin III* are the same as those raised in *Colvin I*. The difference is semantic only, *see* 18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4418 (3d ed. 2021) ("[T]he traditional distinction between direct and collateral estoppel should not of itself control the answer to any particular question of issue preclusion."), but to avoid any confusion, we use the broader term, "issue preclusion."

issue preclusion, which is "when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party." *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984). We review a trial court's application of defensive issue preclusion de novo. *Whiting v. Wells Fargo Bank*, 230 A.3d 916, 926 (D.C. 2020).

Unlike with claim preclusion, whether a dismissal has issue-preclusive effects does not depend on if it was with prejudice. Restatement (Second) of Judgments § 13 cmt. *d* (1982) ("[A]n adjudication that does not bar the plaintiff from maintaining another action against the defendant on the same claim" may yet trigger "issue preclusion in another action between the parties on the same or a different claim as to issues that were decided as a basis for the judgment."); 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: TRIALS § 2373 (4th ed. 2021) ("A dismissal without prejudice . . . ha[s issue-preclusive] effect for issues actually litigated in the first action.");[6] *Deutsch v. Flannery*, 823 F.2d 1361, 1364 (9th Cir. 1987) ("It matters not that the prior action resulted in a dismissal without prejudice."). What matters is that (1) "the issue in the new case . . . was actually

---

[6] *See also* 18 WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 4418 (3d ed. 2021) (issue preclusion may arise "from dismissal of a first action on grounds that do not go to the merits of the claim presented and that are not intended to preclude a second action").

litigated and decided in the prior case," (2) "by a final and valid disposition on the merits," (3) "after a full and fair opportunity for litigation by the same parties or their privies," (4) "under circumstances where the determination was essential to the judgment, and not merely dictum." *Smith v. Jenkins*, 562 A.2d 610, 617 (D.C. 1989); *Davis*, 663 A.2d at 501.[7]

That is the case here. *Colvin I* squarely addressed whether Colvin's contract claims, as pled, articulated a legal basis on which relief could be granted. *Colvin III* raised the same issue because the complaint had not materially changed. The issue decided in *Colvin I* is thus the same as the issue presented to Judge Rigsby in *Colvin III*. *See Deutsch*, 823 F.2d at 1364 (applying issue preclusion where differences between first and second complaints "lack[ed] substantive significance"); *Bachman v. Bachman*, 997 S.W.2d 23, 26 (Mo. Ct. App. 1999) (stating that a dismissal without prejudice for failure to state a claim does not "permit refiling of a petition previously determined not to state a claim"). Had the *Colvin III* complaint pled new claims or pled new facts addressing the deficiencies in the *Colvin I* complaint, our conclusion

---

[7] The Restatement (Second) of Judgments Ch. 3, Topic 2, Title E Introductory Note (1982) recognizes several potential exceptions to the application of issue preclusion even when these four criteria are satisfied. Colvin does not argue that any of these exceptions apply so we do not consider them or the extent to which we follow the Restatement's view regarding those potential exceptions.

would likely be different. But it did neither. *Colvin III* did not raise any new claims, and the few factual alterations in the *Colvin III* complaint did not materially alter what was already presented and rejected by Judge López in *Colvin I*. The first prong (the issue in the new case was litigated and decided in the prior case) is therefore satisfied.

The other elements of issue preclusion are also met. The *Colvin I* dismissal was rendered after a full and fair opportunity for litigation by the same parties attempting to litigate the sufficiency of the *Colvin III* complaint; the issue whether the *Colvin I* complaint was sufficient to withstand a Rule 12(b)(6) motion was essential to the *Colvin I* dismissal order; and the *Colvin I* dismissal resulted in a final and valid judgment on the merits of the sufficiency of the *Colvin I* complaint. *See Davis*, 663 A.2d at 501 (listing elements for issue preclusion). Only the last point warrants elaboration.

As we recognized in *Davis*, the Restatement (Second) of Judgments § 13 (1982) instructs that "for purposes of issue preclusion[,] 'final judgment' includes any prior adjudication of an issue that is determined to be sufficiently firm to be accorded conclusive effect." 663 A.2d at 503 (ellipses omitted). Although *Colvin I* was dismissed without prejudice and (as explained above) is therefore without

claim-preclusive effect, Judge López's determination that the *Colvin I* complaint could not withstand a Rule 12(b)(6) motion was sufficiently firm for issue preclusion purposes. The parties fully briefed and submitted their Rule 12(b)(6) arguments to the trial court; Judge López issued a detailed order explaining why the complaint did not survive Howard's Rule 12(b)(6) motion; and the dismissal was appealable to this court, *Perry*, 474 A.2d at 825-26.

The dismissal of *Colvin I* was therefore final for purposes of issue preclusion. This outcome aligns with the Restatement's view, *supra* cmt. *g*, and the path taken by other jurisdictions where a dismissal without prejudice was given issue-preclusive effect in a subsequent action. *See, e.g.*, *Germain Real Estate Co., LLC v. HCH Toyota, LLC*, 778 F.3d 692, 696 (8th Cir. 2015) (applying Arkansas law); *Garcia v. Prudential Ins. Co. of Am.*, 293 P.3d 869, 873-74 & n.7 (Nev. 2013); *Dema v. City of Mesa*, 338 F. App'x 596, 597 (9th Cir. 2009) (applying Arizona law); *West Coast Mgmt. & Cap., LLC v. Carrier Access Corp.*, 914 A.2d 636, 643-45 (Del. Ch. 2006); *Rodriguez v. Dep't of Corr.*, 29 P.3d 401, 405 (Idaho 2001); *Deutsch*, 823 F.3d at 1364-65.

## B. Leave to Amend *Colvin III*

After the dismissal of *Colvin III*, Colvin requested that Judge Rigsby grant him leave to file an amended complaint.[8] Judge Rigsby denied this request as futile, which Colvin now claims was an abuse of discretion. We disagree.

Although Superior Court Civil Procedure Rule 15(a)(3) instructs that leave to amend "should [be] freely give[n]," it is not required if the amendment would be futile. *Miller-McGee v. Wash. Hosp. Ctr.*, 920 A.2d 430, 436 (D.C. 2007). It would have been here. The amended complaint sought to add a new claim for breach of contract, stemming from the alleged existence of two conflicting degree requirement manuals used by Howard.[9] Under the earlier manual, Colvin argues all of his courses dating back to 2004 were viable toward fulfilling his PhD requirements, whereas under the later manual that Howard incorrectly applied to him, his courses from 2004

---

[8] Because Colvin had already filed an amended complaint in *Colvin III* as a matter of course under Superior Court Civil Procedure Rule 15(a)(1), and because Howard did not consent to the amendment, Colvin was required to seek leave from the court. *See* Super. Ct. Civ. R. 15(a)(3).

[9] Colvin also claims the amended complaint provided additional facts that further demonstrated his dismissal was improper. But he fails to explain how these new facts materially altered his complaint. On our read, the additional facts merely add details to those that were already pled and rejected in *Colvin I* and the initial *Colvin III* complaint.

to 2006 were not viable.  Judge Rigsby found that discrepancy immaterial, and thus any amendment futile, because under both versions of the manual Colvin "had seven (7) years in which to complete the program; [Colvin] did not; and pursuant to policy [Colvin] was aware of, [Howard] dismissed him from the program."

We agree that the proposed amendment would have been futile, though we note an additional and independent reason why that is so: Colvin raised this same argument—that Howard should have applied the earlier degree manual in determining which of his older courses remained viable—in his opposition to the motion to dismiss in *Colvin I*.  Judge López found it did not save his claims from dismissal, and Colvin did not contest that finding (either by filing a motion to reconsider or appealing the judgment to this court).  Judge Rigsby's conclusion in *Colvin III* that it would have been futile to amend the complaint to rely on the earlier degree requirement manual was thus compelled by the issue-preclusive effects of *Colvin I*, consistent with our analysis in Part II.A.2.  Repackaging the argument as a standalone claim, as opposed to a gloss on his preexisting claims as he had presented it in *Colvin I*, does not get Colvin around the issue preclusion bar.

## C. Dismissal of *Colvin IV*

Judge Puig-Lugo dismissed the *Colvin IV* complaint on the basis that the causes of action alleged therein were claim precluded by *Colvin III*. Because we affirm the dismissal of *Colvin III*, we agree.[10]

Unlike *Colvin I*, *Colvin III* was dismissed with prejudice. When a Rule 12(b)(6) dismissal is made with prejudice, it is considered a final judgment "on the merits and is accorded [claim-preclusive] effect." *Ashton Gen. P'ship, Inc. v. Federal Data Corp.*, 682 A.2d 629, 632 n.2 (D.C. 1996) (internal quotation marks omitted); *see also* 7 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: TRIALS § 2373 (4th ed. 2021) (stating that a "dismissal with prejudice normally will act as a bar to a subsequent action between the same parties"). *Colvin IV*, which is identical to the amended complaint Colvin sought leave to file in *Colvin III*, is therefore barred by claim preclusion. To the extent any new claims were added to the complaint filed in *Colvin IV*—which is questionable given that the claims raised

---

[10] Had we reversed the dismissal of *Colvin III*, claim preclusion could not have applied. *See Adams v. Jonathan Woodner Co.*, 475 A.2d 393, 397 (D.C. 1984) ("[A] judgment based upon [issue preclusion] or [claim preclusion] is no longer valid when the decision upon which the court relied in applying either of the doctrines has been reversed.").

in the *Colvin IV* complaint are identical to those raised and rejected as futile in Colvin's motion to amend the *Colvin III* complaint—those claims would nonetheless be claim-precluded because they could have been raised in *Colvin III*. *See Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999) (claim preclusion "operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised").

Colvin correctly notes that Judge Rigsby's order in *Colvin III* does not state whether it is with or without prejudice. But Superior Court Civil Procedure Rule 41(b)(1)(B) states that "[u]nless the dismissal order states otherwise or as provided elsewhere in these rules, a dismissal by the court—except a dismissal for lack of jurisdiction or for failure to join a party under Rule 19—operates as an adjudication on the merits." Because "'an adjudication on the merits' is synonymous with a dismissal with prejudice," a trial "court that dismisses a case under Rule 12(b)(6) without stating whether it is with or without prejudice operates as a dismissal with prejudice." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001)); *see also Wagshal v. Rigler*, 711 A.2d 112, 114 n.6 (D.C. 1998) ("[T]he presumption in most dismissals is that they operate 'as adjudications upon the merits,' that is, with prejudice.") (quoting Super. Ct. Civ. R. 41(b)); 7

WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: TRIALS § 2373 (4th ed. 2021) ("If the court does not specify that the dismissal is without prejudice, and the basis for it comes within the terms of the final sentence of [Federal] Rule [of Civil Procedure] 41(b), it will be treated as being with prejudice.").[11]

There is nothing in the *Colvin III* dismissal order to suggest Judge Rigsby intended for it to be without prejudice. In fact, the order instructed that the case be closed and that all future hearings be vacated, strongly suggesting that he intended a dismissal with prejudice. We therefore have no reason to depart from the presumption that it was a dismissal with prejudice.

## III.

The orders of the Superior Court are affirmed.

*So ordered.*

---

[11] Superior Court Civil Procedure Rule 41(b)(1)(B) is substantially similar to its federal counterpart. *See* Comment to 2017 Amendments on Super. Ct. Civ. R. 41 (noting differences between the federal and local rule, none of which are applicable here). We may therefore "look to federal court decisions interpreting the federal rule as 'persuasive authority in interpreting the local rule.'" *Goldkind v. Snider Bros., Inc.*, 467 A.2d 468, 472 (D.C. 1983) (quoting *Vale Props., Ltd. v. Canterbury Tales, Inc.*, 431 A.2d 11, 13 n.3 (D.C. 1981)).