OPINION OF THE COURT
Emily Jane Goodman, J.
The facts are not in dispute in this action by Lyons & Associates, Inc. (Lyons), a real estate broker, for commissions alleg *916 edly due from 16 East 48th Street Corporation (16 East). The parties entered into a brokerage agreement in June 1989 which provided for a specific payment schedule for commissions. The brokerage agreement provided, first, that defendant would pay plaintiff $66,000 in two payments. Those payments were made and are not the subject of this lawsuit. The agreement also provided for an additional commission of $71,500 to be paid on January 15, 1994 if defendant’s option to purchase the building was not exercised on or before December 31, 1993. The option was not exercised. Defendant did not pay the commission. Plaintiff then commenced this action on September 28, 1995. Each side now moves for summary judgment, agreeing that the issues for the court to decide are whether the Statute of Limitations ran prior to September 1995 and whether plaintiff was competent to bring the lawsuit under article 12-A of the Real Property Law which governs licensing of real estate brokers.
Section 442-d of the Real Property Law states, in pertinent part: "No person* * * shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered * * * in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker * * * on the date when the alleged cause of action arose.”
This provision has consistently been interpreted by courts as meaning that a person or entity must have been duly licensed in New York State at the time that it performed brokerage services. In Galbreath-Rufíin Corp. v 40th & 3rd Corp. (19 NY2d 354, 362), the Court of Appeals stated clearly "[i]t is, of course, the law that commissions cannot be recovered by a real estate broker who is unlicensed while his services were rendered.” In this case, it is uncontested that plaintiff was licensed as a broker in 1989 when it rendered brokerage services to defendant, but that subsequently its license lapsed and was not renewed by January 1995. In NFS Servs. v 73rd St. Assocs. (102 AD2d 388, 391), the plaintiff’s broker had never been licensed in New York and thus was precluded from recovering brokerage commissions from a New York transaction. In Bersani v Basset (184 AD2d 996, 998), the Appellate Division, Fourth Department, permitted a broker to recover a commission even though the broker was licensed at the time the services were rendered but not at the time of the closing. The parties had agreed that *917 the commission would be due upon closing, and apparently the broker’s license had lapsed by that time. The Court noted that "[generally, a broker is entitled to a commission if he were licensed at the time the services were rendered, not at the time of the closing * * * [t]he broker’s cause of action is predicated upon the rendering of specific services, namely, bringing together the minds of the buyer and seller [citations omitted].” (Supra, at 998.) In rejecting the defendants’ argument that the plaintiffs failure to maintain a license at the date of the closing precluded recovery, the Court stated that "[t]he licensing requirement for real estate brokers is intended to protect the public from inept, inexperienced or dishonest persons, not to permit others to take advantage of a violation of the statute to escape their obligations [citations omitted].” (Supra, at 998.) Similarly, the Court of Appeals, in Galbreath (supra, at 362), also underscored that the "animating purpose” of the statute is to protect the public, not to permit others to take advantage of the violation of the licensing statute to escape their obligations.
Defendants here argue that section 442-d not only establishes a licensing requirement, but also determines the accrual date of plaintiffs cause of action for Statute of Limitations purposes. I disagree. None of the cited cases or cases located by the court interpreting section 442-d indicate that this statute relates to a Statute of Limitations for bringing an action. The general principle in New York is that a cause of action accrues when a wrong is done. In contract cases, the six-year Statute of Limitations under New York law begins to run when the breach occurs or when one omits the performance of an obligation. (State of New York v Fenton, 68 AD2d 951, 952.) It belies common sense to suggest, as does defendant here, that the Statute of Limitations applicable to this contract action began to run prior to the maturation of the contingency, namely the exercise of the option to buy. Courts consistently have held that where a right of action depends on the happening of a contingent future event, the cause of action accrues and the Statute of Limitations begins to run only from the time the event occurs. (Blakely v Agency of Canadian Car & Foundry Co., 73 NYS2d 573, affd 272 App Div 1001 [1947].)
In this case, the brokerage agreement provided that if defendant did not exercise the option to buy pursuant to the lease, on January 15, 1994 defendant "shall pay to * * * [plaintiff] * * * the commission [sum] of $71,500.” The brokerage agreement also provided that if defendant did exercise its option to *918 buy, at the closing of the property it would pay a commission ranging from $150,000 to $160,000. Thus the triggering event for defendant’s obligation of the $71,500 sued for in this action was defendant’s nonexercise of its option. Defendant did not exercise this option and therefore its failure to pay the $71,500 amount on January 15, 1994 was the breach of the agreement that constitutes the accrual of the cause of action for Statute of Limitations purposes. Thus the action was timely commenced.
As both sides agree that defendant failed to make the payment, there are no outstanding issues of fact and summary judgment in favor of plaintiff is warranted.
Therefore, it is ordered that defendant’s motion for summary judgment is denied and plaintiff’s motion for summary judgment is granted and the Clerk is directed to enter judgment in favor of plaintiff and against defendant in the amount of $71,500, together with interest from January 15, 1994, percent to be computed by the Clerk, together with costs and disbursements to be taxed by the Clerk upon submission of an appropriate bill of costs.